IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JACOB DIAZ,

    Plaintiff,

vs.                                                        No. CIV-12-1117 KG/KBM

ROBERT METZGAR and JOSHUA RICHARDS,
in their individual and official capacities as
Albuquerque Police Officers, and the CITY OF ALBUQUERQUE,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Defendants Robert Metzgar's (Metzgar) and Joshua Richards' (Richards), Individual Defendants' Joint Motion for Summary Judgment Based on Qualified Immunity (Motion for Summary Judgment) and their memorandum in support of the Motion for Summary Judgment, filed on February 4, 2014. (Doc. 56). On February 24, 2014, Plaintiff filed a response to the Motion for Summary Judgment and on March 13, 2014, Defendants filed a reply. (Docs. 58 and 59). Having reviewed the Motion for Summary Judgment, the accompanying briefs, and the evidence of record, the Court grants the Motion for Summary Judgment, in part, in that: Plaintiff's First Amendment claim brought in Count I against Defendant Richards is dismissed with prejudice; Plaintiff's Fourth Amendment claim brought in Count III is dismissed with prejudice; and Defendants' request for an award of attorney's fees and costs is denied.

*I.     Plaintiff's Complaint (Doc. 1)*

This retaliation of free speech, excessive force, and false arrest lawsuit arises from the arrest of Plaintiff, on November 8, 2009, at The Library (Library), an establishment in downtown

Albuquerque, New Mexico, on the charges of public affray, *see* NMSA 1978 § 30-20-2 (Repl. Pamp. 2004), disarming a police officer, *see* NMSA 1978 § 30-22-27 (Repl. Pamp. 2004), and battery on a police officer, *see* NMSA 1978 § 30-22-24 (Repl. Pamp. 2004).[1] Plaintiff brings this lawsuit under 42 U.S.C. § 1983 against employees of the Albuquerque Police Department in their individual and official capacities.[2] In Count I, Plaintiff alleges a Section 1983 claim against all Defendants for retaliation of free speech in violation of the First Amendment. In Count II, Plaintiff alleges a Section 1983 claim against all Defendants for excessive use of force in violation of the Fourth Amendment. Finally, in Count III, Plaintiff alleges a Section 1983 claim against all Defendants for false arrest in violation of the Fourth Amendment.

Defendants now move for summary judgment on Counts I, II, and III on qualified immunity grounds. Should Defendants prevail on the Motion for Summary Judgment, Defendants seek an award of attorney's fees and costs. Plaintiff opposes the Motion for Summary Judgment in its entirety.

II.     *Standard of Review*

When a defendant moves for summary judgment on the basis of a qualified immunity defense, the Court "still view[s] the facts in the light most favorable to the non-moving party and resolve[s] all factual disputes and reasonable inferences in its favor." *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014). Unlike other affirmative defenses, the plaintiff bears the burden of overcoming the defense of qualified immunity. *Id*. At the summary judgment stage, the Court "must grant qualified immunity unless the plaintiff can show (1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's conduct." *Id.* Ordinarily, in order for the law to be clearly

---

[1] A state judge subsequently dismissed all charges. (Doc. 10) at 3.
[2] On November 25, 2013, the Court granted the Stipulated Motion to Dismiss Defendant City of Albuquerque. (Doc. 43).

2

established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains. *Mick v. Brewer*, 76 F.3d 1127, 1134 (10th Cir. 1996).

If the plaintiff successfully carries his two-part burden, the burden then shifts to the defendant. *Id.* At that point, a defendant must show that there are no disputes of material fact about whether his conduct was objectionably reasonable in light of clearly established law and the information known to the defendant at the time. *Id.* A motion for summary judgment based on qualified immunity, however, should be "properly denied," if "the record shows an unresolved dispute of historical fact relevant to" the qualified immunity analysis. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002) (citations omitted).

III.     *Facts and Reasonable Inferences Viewed in the Light Most Favorable to Plaintiff*[3]

On the evening of November 7, 2009, Plaintiff was patronizing an Albuquerque, New Mexico, establishment known as the Library. (Doc. 58); (Doc. 58-1) at 2 (depo. at 17). Upon entering the Library, Plaintiff sat in a booth near the entrance and proceeded to consume an alcoholic beverage. (Doc. 58-1) at 2 (depo. at 18). Approximately forty-five minutes after his arrival, Plaintiff was instructed by a Library employee to leave the booth because it was reserved for another patron. *Id.* (depo. at 19-20). Plaintiff refused to move. *Id.* (depo. at 20). When Plaintiff refused to move, a patron identified as "Royal" and three other males approached Plaintiff and instructed Plaintiff to leave their booth. *Id.* Plaintiff again refused to move and a verbal confrontation ensued. *Id.* at 2-3 (depo. at 20-21).

Before the confrontation could become physical, one of the unidentified males of the group offered to purchase Plaintiff a beverage if Plaintiff removed himself from the booth. *Id.* at 3 (depo. at 21). Plaintiff agreed. *Id.* The male associate purchased a beer from the bartender

---

[3] Unless otherwise noted, the summary of material facts is undisputed.

3

and gave Plaintiff an open beer. *Id.* at 3 (depo. at 22-23). Minutes after Plaintiff consumed three-quarters of the beer he felt "weird," his speech was slurred, and he had difficulty walking. *Id.* (depo. at 22-24); (Doc. 56-2) at 4 (depo. at 34-35). Plaintiff began to walk toward Royal and his associates to confront them about spiking the beer. (Doc. 58-1) at 3-4 (depo. at 24-26).

At approximately 1:00 a.m. on November 8, 2009, Defendants entered the Library while on patrol. (Doc. 56-3) at 2; (Doc. 56-4). Shortly thereafter, Plaintiff noticed two police officers inside the Library. (Doc. 58-1) at 5 (depo. at 29-30). Plaintiff did not approach the police officers, but continued to walk toward Royal. *Id.* Once Plaintiff was in close proximity to Royal and his associates, he confronted the male who purchased the beer. *Id.* at 3-4 (depo. at 24, 27). The male denied spiking the beer and pushed Plaintiff. *Id.* at 3 (depo. at 24). Plaintiff, feeling threatened, reached for Royal and grabbed the gold chains that were around Royal's neck.[4] *Id.* at 4 (depo. at 27). Defendants, witnessing the altercation, started to approach Plaintiff and Royal. (Doc. 56-3) at 2; (Doc. 56-4). During the altercation, Plaintiff and Royal lost their balance and fell to the ground. (Doc. 58-1) at 5 (depo. at 30). In his deposition, Plaintiff testified that as soon as he fell to the ground someone grabbed him from behind, causing him to hit his head and lose consciousness.[5] *Id.* (depo. at 31-32). Plaintiff further testified that he did not see the individual who grabbed him, but believes it was a police officer.[6] *Id.* (depo. at 31).

After Plaintiff and Royal fell to the ground a Library employee, identified as Damian Breaux (Breaux), attempted to intervene. (Doc. 56-3) at 2. Defendant Richards gave several

---

[4] Defendants dispute this fact and claim that they witnessed Plaintiff use his left hand to grab Royal by his gold chains and punch Royal in the face. (Doc. 56-3) at 2; (Doc. 56-4).

[5] Plaintiff's response improperly attempts to raise a genuine issue of material fact as to some of the facts after Plaintiff lost consciousness. For example, with respect to Defendants' undisputed material facts 7-10, Plaintiff argues, without more, that Plaintiff was "unconscious for an instant." (Doc. 58) at 3. Plaintiff neither specifies what portions of these facts he disputes nor does he identify what portions of the record support a dispute. Plaintiff's bare assertion that material facts are in dispute is insufficient. Fed. R. Civ. P. 56(c)(1)(A)-(B).

[6] Defendants dispute this fact and claim that they witnessed Plaintiff hit his head as he was falling. (Doc. 56-3) at 2.

verbal commands to Plaintiff, Royal, and Breaux, which were not followed. (Doc. 56-3) at 2-3. Because the three individuals were not cooperating, Defendant Richards used an open hand strike and a knee strike on Breaux to get Breaux away from the altercation. *Id.* Defendant Richards then used a knee strike to remove Plaintiff off of Royal. *Id.* at 3. The knee strike caused Plaintiff to fall onto his back with his head facing the south end of the bar. *Id.*

Once Plaintiff was lying on his back, Defendant Richards gave Plaintiff several commands to remain on the ground. *Id.* Plaintiff, in response, started to clench his fists in an aggressive manner and stand. *Id.*; (Doc. 56-4). Defendants, who were approximately three feet from Plaintiff, reported that Plaintiff started to aggressively approach Defendants. (Doc. 56-3) at 3; (Doc. 56-4). Defendant Metzgar gave Plaintiff at least one verbal command to stop. (Doc. 56-4). Defendant Richards, due to his close proximity to Plaintiff, kicked Plaintiff in the face and used a knee strike and an open hand strike to force Plaintiff to the ground. (Doc. 56-3) at 3. Defendant Metzgar also delivered several leg strikes to Plaintiff's inner thigh to keep him on the ground. (Doc. 56-4). Plaintiff again attempted to approach Defendant Richards. (Doc. 56-3) at 3. Due to Plaintiff's behavior, Defendants placed Plaintiff in separate wrist locks and proceeded to escort Plaintiff out of the Library. *Id.*; (Doc. 56-4). Plaintiff began resisting, causing Defendant Metzgar to lose his "hold" on Plaintiff. (Doc. 56-4); (Doc. 56-5). In order to regain control, Defendant Metzgar placed several open hand strikes to Plaintiff's rear upper shoulder. (Doc. 56-4).

During the escort, Albuquerque Police Officers J. Burton (Officer Burton), T. Apodaca (Officer Apodaca), and Agent Jerry Belyen (Agent Belyen), of the New Mexico Department of Public Safety Special Investigations Division, arrived on scene.[7] (Doc. 56-3) at 3. Defendant

---

[7] Plaintiff denies the following material facts that he attempted to reach for and un-holster Defendant Metzgar's firearm. Plaintiff, however, has not produced any evidence pursuant to Fed. R. Civ. P. 56(c)(1)(A)-(B) to support a

5

Richards asked Officer Burton to take over escorting Plaintiff, so that he and Officer Apodaca could question Royal. *Id.* Defendant Metzgar, Officer Burton, and Agent Belyen proceeded to escort Plaintiff from the Library. *Id.*; (Doc. 56-5); (Doc. 56-6).

At this point, Defendant Metzgar "felt tugging and aggressive pulling" on his duty weapon. (Doc. 56-4). Defendant Metzgar then realized that Plaintiff had broken the retention safety device on his holster. *Id.* Officer Burton and Agent Belyen, also witnessing Plaintiff's attempt to un-holster Defendant Metzgar's firearm proceeded to apply a leverage takedown. (Doc. 56-5); (Doc. 56-6); (Doc. 56-7); (Doc. 56-8). In the course of the takedown, Plaintiff struck his face on the ground and Defendant Metzgar, Officer Burton, and Agent Belyen landed on top of Plaintiff. (Doc. 56-4); (Doc. 56-5); (Doc. 56-6); (Doc. 56-7). While on the ground, Plaintiff continued to resist efforts to be placed in handcuffs. (Doc. 56-4); (Doc 56-6); (Doc. 56-10). In his police report, Defendant Metzgar stated that he delivered several leg strikes to Plaintiff's upper shoulder/neck area to allow the other officers "enough time to safe[ly] place the handcuffs on" Plaintiff. (Doc. 56-4). Defendants then called for an ambulance. (Doc. 56-3) at 3.

Shortly after being handcuffed, Plaintiff regained consciousness. (Doc. 56-2) at 4 (depo. at 33); (Doc. 58-1) at 5 (depo. at 32). In his deposition, Plaintiff testified that when he was escorted out the front door of the Library his hands were handcuffed behind his back and his arms were supporting his entire body weight. (Doc. 56-2) at 3-4 (depo. at 32-33, 35).

---

genuine dispute. Rather, Plaintiff relies on his deposition testimony in which he testified that he could not recall reaching for an officer's firearm or attempting to disarm an officer. (Doc 58-1) at 6 (depo. at 48). When asked if Plaintiff would, generally, deny a claim of an attempt to disarm an officer, Plaintiff testified:
> I promise you there would be no attempt. A police officer carries a M9 weapon that I have been completely certified, on his right side, very exposed. I'm pretty sure that it wouldn't be any attempt at all to take an officer's weapon. I know for a fact, even in my subconscious, I know better that it would be suicide to grab a police officer's weapon.

Plaintiff's bare assertion that he would never attempt to disarm an officer lacks evidentiary support in the record and is not based on actual recollection. Accordingly, Plaintiff's testimony is not sufficient to support a genuine issue under Fed. R. Civ. P. 56(c)(1)(A)-(B) as to the material facts regarding the attempt to disarm Defendant Metzgar.

At this point in the incident, parties provide conflicting evidence of the events. Defendants claim that due to Plaintiff's behavior they relocated Plaintiff to the corner of Third Street and Central Avenue and requested an ambulance to check on Plaintiff's injuries. (Doc. 56-5); (Doc. 56-8). In his deposition, Plaintiff testified that he lost consciousness a second time and woke up lying on the ground, in a parking garage, with his hands cuffed behind his back.[8] (Doc. 56-2) at 5-6 (depo. at 42, 45); (Doc. 58-1) at 6 (depo. at 45). Plaintiff's jaw and eyes were swollen, his lip was bloody, and he felt his nose was "cracked." (Doc. 58-1) at 6 (depo. at 45). Plaintiff also testified that he saw four officers huddled together, talking and laughing. *Id.* Plaintiff further testified that he could not recall what the officers looked like, but he remembered that one officer had blond hair. *Id.*; (Doc. 56-2) at 5 (depo. at 41). After Plaintiff heard the officers' refer to him as a "s*** bag," Plaintiff responded by yelling, "F*** you, you f***ing pig." (Doc. 56-2) at 5 (depo. at 43); (Doc. 58-1) at 6 (depo. at 45); (Doc. 9) at 2. In response to his statement, Plaintiff testified that a blond haired officer walked over to him and said, "What did you say? What did you say? Oh, really, huh," and kicked Plaintiff in the face.[9] (Doc 56-2) at 5 (depo. at 43). Plaintiff contends, through counsel, that after he was kicked he coughed and spit up blood prior to a spit sock being placed over his head.[10] (Doc. 58) at 2, 5. Plaintiff again lost consciousness. (Doc 56-2) at 5 (depo. at 43).

Once an ambulance arrived, Plaintiff was transferred to a gurney, removed from the passive restraint system, and secured with restraints. (Doc. 56-3) at 3; (Doc. 56-12). Due to

---

[8] Defendants dispute this fact and claim that there is no evidence Plaintiff was in a parking garage. (Doc. 56) at 6; (Doc. 59) at 4.
[9] Defendants dispute the material fact that either Defendant kicked Plaintiff in retaliation of Plaintiff's speech. Defendants contend that neither Defendant is blond, nor is there admissible evidence to support Plaintiff's allegation. (Doc. 59) at 4-5.
[10] Defendants dispute this material fact and claim that after Plaintiff was moved to the corner of Third Street and Central Avenue, he continued to be combative and spit blood on Defendants and Officer Burton. (Doc. 56-3) at 3; (Doc. 56-4); (Doc. 56-5); (Doc. 56-6); (Doc. 56-12). Due to Plaintiff's aggressive behavior, a spit sock was placed on Plaintiff's head and he was placed into a passive restraint system until the ambulance arrived. (Doc. 56-3) at 3; (Doc. 56-4); (Doc. 56-5); (Doc. 56-6); (Doc. 56-12).

Plaintiff's behavior, Defendant Richards rode with Plaintiff to the University of New Mexico Hospital. (Doc. 56-3) at 3. At the hospital, Plaintiff presented an "altered level of consciousness secondary to acute alcohol and benzodiazepine intoxication." (Doc. 56-13) at 2. Due to the level of Plaintiff's sedation, he was intubated to protect his airway until his sedation level decreased. *Id.* at 1-2. Plaintiff also presented "some mild superficial abrasions and shallow lacerations [] on the right forehead, [] posterior scalp," and the left knee. *Id.* Plaintiff was not actively bleeding, nor did he present any other injuries. *Id.*

On November 9, 2009, Plaintiff complained to medical staff of pain and instability in his left shoulder, exacerbating symptoms from a prior torn rotator cuff. (Doc. 58-20) at 2-3. Plaintiff also reported an injury to his right shoulder. *Id.* at 2. On November 12, 2009, x-rays showed that Plaintiff's left shoulder was not dislocated, nor was there evidence of a fracture. *Id.* at 4. The treating physician also reported that there was no other evidence of injury to the right upper extremity or bilateral lower extremities. *Id.*

IV.     *Discussion*

As a preliminary matter, Defendant Richards contends that Count I and Count II should be dismissed, as to him, because it is undisputed that he did not retaliate against Plaintiff, nor did he use excessive force. In his complaint Plaintiff alleges that Defendant Richards failed to intervene during Defendant Metzgar's retaliatory battery and use of excessive force. *See* (Doc. 1) at 3 ¶ 14; 5 ¶ 25, ¶ 27.

The duty to intervene appears to arise exclusively in the context of the Fourth and Eighth Amendments. In a Fourth Amendment excessive force claim, the Tenth Circuit has held that a defendant is not entitled to qualified immunity for failure to intervene when a plaintiff has demonstrated excessive force. *See Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210 (10th Cir.

2008) (holding defendant not entitled to qualified immunity on excessive force claim because police officers have affirmative duty to intervene when, in their presence, individual's constitutional rights are infringed by another officer); *see also Fogarty v. Gallegos*, 523 F.3d 1147, 1163 (10th Cir. 2008) (stating that if officer is present at arrest, "with an opportunity to prevent the excessive use of force, he would have had a duty to intervene."). As will be discussed below, Defendants are not entitled to qualified immunity on Count II and, therefore, the Court will not dismiss Defendant Richards from Count II. The Court, however, concludes that Defendant Richards is entitled to summary judgment on Count I because it is undisputed that Defendant Richards did not touch nor retaliate against Plaintiff for his speech. Moreover, the Court could find no authority establishing a duty to intervene in an alleged First Amendment violation. Accordingly, the Court will dismiss Count I with prejudice as to Defendant Richards.

  A. *Defendant Metzgar is not entitled to qualified immunity on the retaliation of speech claim*

To establish a constitutional violation in a First Amendment retaliation claim, Plaintiff must demonstrate that a reasonable jury could find that (1) he "was engaged in a constitutionally protected activity;" (2) Defendant Metzgar's actions caused him "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that" protected activity; and (3) Defendant Metzgar's actions were "substantially motivated as a response to" Plaintiff's constitutionally protected speech. *See Becker v. Kroll*, 494 F.3d 904, 925 (10th Cir. 2007).

Viewed in the light most favorable to Plaintiff, the evidence shows that after Plaintiff was handcuffed he exercised his freedom of speech by saying, "F*** you, you f***ing pig" to Defendant Metzgar and the other officers on scene. Immediately thereafter, an officer verbally responded to Plaintiff's comment and kicked Plaintiff in the face resulting in Plaintiff losing consciousness. The Court finds that such allegations, if proven, show that Plaintiff was

9

exercising his freedom of speech,[11] that the injury Plaintiff sustained would chill a person of ordinary firmness from continuing to engage in speech, and that the officer's immediate reaction was substantially motived by Plaintiff's speech. *See Smith v. Maschner*, 899 F.2d 940, 948-50 (10th Cir. 1990) (finding evidence that constitutionally protected action immediately followed by disciplinary action against plaintiff was sufficient to support reasonable inference that defendants had retaliatory motive). Accordingly, Plaintiff has satisfied the first prong of the qualified immunity inquiry.

It is also well established that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *City of Houston v. Hill*, 482 U.S. 451, 461 (1987). An individual may not "be punished for nonprovocatively voicing his objection to what he obviously felt was a highly questionable detention" or arrest by a police officer. *Norwell v. City of Cincinnati*, 414 U.S. 14, 16 (1973) (per curiam).

Plaintiff has shown that on November 8, 2009, it was clearly established that the First Amendment barred officers from retaliating against a person for voicing his objection to his detention or arrest. In light of the established law, a reasonable officer would have known that Defendant Metzgar's alleged conduct of kicking Plaintiff in response to Plaintiff's statement violated the First Amendment. Defendant Metzgar, accordingly, is not entitled to qualified immunity.

The Court further denies Defendant Metzgar's motion for qualified immunity because material issues of fact remain as to whether Defendant Metzgar kicked or struck Plaintiff. Defendant Metzgar argues that there is no genuine issue of material fact because: (1) Plaintiff's evidence is inadmissible and, thus, cannot support a genuine dispute as to the material fact; (2) Plaintiff claims a "blond hair" officer kicked him, and Defendant Metzgar is not blond; and (3)

---

[11] The issue of whether Plaintiff's speech was protected speech is not before the Court.

Defendant Metzgar had probable cause to arrest Plaintiff. Plaintiff contends that despite his inability to specifically identify Defendant Metzgar, he has presented sufficient facts and evidence to establish a First Amendment retaliation claim.

In his reply, Plaintiff proffers a report, completed by Detective C. Mason of the Albuquerque Criminal Investigations Division, to create a genuine dispute that Defendant Metzgar battered Plaintiff. In the report, Officer Burton told Detective Mason that after Plaintiff was handcuffed, laying on the ground, and non-combative, he observed Defendant Metzgar kick Plaintiff in the face and apply several downward heal strikes and heal grinds to Plaintiff's face and head. Officer Burton's statement and Detective Mason's report of that statement are hearsay, *see* Fed. R. Evid. 802, and Plaintiff does not address their admissibility. *See Fisher v. City of Las Cruces*, 584 F.3d 888, 897 n.3 (10th Cir. 2009) (observing that hearsay is "inadmissible in a summary judgment proceeding"). The Court, therefore, will not consider the report or Officer Burton's statements to create a triable issue of fact. Nonetheless, Plaintiff's testimony that he was battered after his speech does create a genuine dispute as to whether Defendant Metzgar was the officer who engaged in the unconstitutional conduct. *See* Fed. R. Civ. P. 56(c)(1)(A) (deposition may support assertion that fact is genuinely disputed). Additionally, it is undisputed that Defendant Metzgar was present when Plaintiff made his statement and that fact is sufficient to support an inference that Defendant Metzgar may have been the officer who violated Plaintiff's First Amendment rights. *See Fogarty*, 523 F.3d at 1163-64 (denying qualified immunity even though plaintiff could not positively identify offending officer because there was sufficient evidence to support inference that defendant was present when constitutional violation occurred).

Lastly, Defendant Metzgar's argument that he had probable cause to arrest Plaintiff and, thus, is entitled to qualified immunity is misguided. In 2009, it was not clearly established in the Tenth Circuit whether there was "a First Amendment right be free from retaliatory arrest when the arrest" was supported by probable cause. *Wilson v. Village of Los Lunas*, ___ Fed. Appx. ___, 2014 WL 3586517 *8 (10th Cir.). In the present case, however, Plaintiff contends that Defendant Metzgar battered him in retaliation for his speech following his arrest, not that Defendant Metzgar arrested him in retaliation. Defendant Metzgar's probable cause argument thus fails because Plaintiff alleges retaliatory battery, not a retaliatory arrest.

    B.    *Defendants are not entitled to summary judgment on the excessive force claim*

In his response, Plaintiff did not dispute the force used by Defendants prior to escorting Plaintiff from the Library. Plaintiff asserts, however, that Defendants violated his Fourth Amendment rights by use of excessive force because Plaintiff was lying on the ground in handcuffs when Defendant Metzgar kicked Plaintiff in the face causing him to lose consciousness. Defendants argue that they are entitled to qualified immunity because (1) their actions were objectively reasonable under the totality of the circumstances; (2) Plaintiff has failed to present admissible evidence to establish that Officer Metzgar battered Plaintiff after Plaintiff was handcuffed;[12] and (3) Plaintiff's injuries were "relatively minor."

The issue in Fourth Amendment excessive force cases is whether, under the totality of the circumstances, an officer's use of force was objectively reasonable. *Graham v. Connor*, 490 U.S. 386, 397 (1989). This test involves viewing the reasonableness of an officer's use of force from an "on-scene" perspective. *Saucier v. Katz*, 533 U.S. 194, 205 (2001), *overruled, in part, on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). Factors to consider in

---

[12] As more fully discussed in the preceding section, the Court finds that Plaintiff's testimony is admissible and creates a genuine dispute as to the material fact of whether Defendant Metzgar battered Plaintiff. The Court, therefore, will not address Defendants' second argument.

determining if use of force was excessive include "'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* (quoting *Graham*, 490 U.S. at 396). Additionally, to succeed on an excessive force claim, a plaintiff must show "some actual injury that is not *de minimis*, be it physical or emotional." *Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007).

Viewed in the light most favorable to Plaintiff, the evidence shows that Plaintiff was laying on the ground with his hands handcuffed behind his back when Defendant Metzgar kicked Plaintiff in the face resulting in Plaintiff losing consciousness. Due to Plaintiff's positioning he posed no threat, at that time, to Defendants, other officers, or the public. Additionally, while it is disputed whether Plaintiff was combative, there is no evidence that Plaintiff made an attempt to flee. A reasonable jury could conclude, from the above described facts, that the amount of force used by Defendant Metzgar was excessive, and Defendant Richards' failure to intervene allowed such excessive force.

Furthermore, based on the cases cited above, the law was clearly established at the time of the incident that an officer's actions must be objectively reasonable in light of the facts and circumstances that he faces. A reasonable officer would have known that kicking a restrained individual who is not attempting to flee would violate the individual's Fourth Amendment rights. In regard to Defendant Richards, at the time of the incident, it was well-settled that the failure to intervene theory was a derivative of an excessive force claim. A reasonable officer would have known that he had an affirmative duty to intervene when, in his presence, another officer was utilizing excessive force. Hence, Plaintiff has satisfied the second prong of the qualified immunity test.

Having met the test to defeat qualified immunity, the burden shifts back to Defendants to prove that there is no genuine issue of material fact.  Defendants argue that Plaintiff's "relatively minor" injuries refute any allegation that Defendants battered Plaintiff.  Although Plaintiff did not address Defendants' assertion directly, his response describes evidence of his injuries.  Specifically, Plaintiff testified that after he was kicked in the head he lost consciousness.  The medical reports, provided by both parties, also demonstrate that Plaintiff sustained "some mild superficial abrasions and shallow lacerations" on his "right forehead and posterior scalp."  (Doc. 56-13) at 1.  Several days following the incident, Plaintiff demonstrated "weakness," "numbness," and pain in his upper and lower extremities.  (Doc. 58-20) at 2.  Taking Plaintiff's testimony, together with the medical reports and surrounding circumstances, a reasonable jury could conclude from the alleged facts that the kick to Plaintiff's face caused Plaintiff more than a *de minimis* injury.  The Court, accordingly, finds that Defendants have failed to meet their burden and are not entitled to qualified immunity on Count II.

  *C.  Defendants are entitled to summary judgment on the false arrest claim*

Defendants contend that they are entitled to qualified immunity on Count III because probable cause existed from Plaintiff's arrest on all three charges:  public affray, disarming a police officer, and battery on a police officer.  Plaintiff does not dispute probable cause for the public affray charge.  Plaintiff asserts, however, that Defendants lacked probable cause for disarming a police officer because NMSA 1978, § 30-22-27, does not apply to an alleged attempt and it is disputed whether he attempted to disarm Defendant Metzgar.[13]  Plaintiff also argues that Defendants lacked probable cause for the charge of battery on a police officer because  (1) the act of spitting is not an unlawful touching of an officer; and (2) Plaintiff did possess the requisite

---

[13]  In the above discussion of the facts, the Court found that Plaintiff's bare assertion that he would never attempt to disarm an officer lacked evidentiary support in the record and was not based on actual recollection.  Thus, the issue of whether Plaintiff attempted to disarm Defendant Metzgar is not in dispute.

14

intent under NMSA 1978, § 30-22-24. The Court need not reach a finding of probable cause on the battery on a police officer charge because the Court concludes that probable cause existed for public affray and disarming a police officer. *See Spalsbury v. Sisson*, 250 Fed. Appx. 238, 245 (10th Cir. 2007) ("an arrest is lawful under the Fourth Amendment so long as probable cause existed as to any offense that could be charged.") (citing *Devenpeck v. Alford*, 543 U.S. 146, 152-53 (2004)).

"When a warrantless arrest is the subject of a § 1983 action, the defendant arresting officer is 'entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest' the plaintiff." *Romero v. Fay,* 45 F.3d 1472, 1476 (10th Cir. 1995) (quoting *Hunter v. Bryant,* 502 U.S. 224, 228 (1991)). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Jones v. City & Cnty. of Denver,* 854 F.2d 1206, 1210 (10th Cir. 1988) (citations omitted). "Officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause . . . and in those situations courts will not hold that they have violated the Constitution." *Saucier,* 533 U.S. at 206.

Here, viewing the facts in light most favorable to Plaintiff, Defendants observed Plaintiff participate in a physical altercation at the Library. In the course of Defendants' attempt to intervene, Plaintiff became combative and aggressive requiring Defendants to restrain Plaintiff and remove him from the premises. During the escort, Defendant Metzgar felt tugging and aggressive pulling on his duty weapon and realized that Plaintiff had broken the retention safety device on his holster. Witnessing Plaintiff's actions, Officer Burton and Agent Belyen proceeded to apply a leverage takedown. Two non-law enforcement witnesses corroborated

Defendant Metzgar's, Officer Burton's, and Agent Belyen's recitation of the events. These facts entitle Defendants to qualified immunity from Plaintiff's false arrest claim because a "reasonable officer" could have believed that the facts and circumstances surrounding Defendants' encounter with Plaintiff established probable cause that Plaintiff had committed public affray and was in the act of disarming a police officer. Given the facts that led to Plaintiff's arrest, Plaintiff has failed to demonstrate that Defendants violated his constitutional rights. Thus, Defendants are entitled to qualified immunity on Count III. Because the Court finds that no constitutional violation occurred, it need not reach the question of whether the right allegedly violated was clearly established.

### D. *Defendants' Request for an Award of Attorney's Fees and Costs*

Although Defendants have prevailed on part of their Motion for Summary Judgment, Defendants cite no legal authority in support of their request for an award of attorney's fees and costs. Accordingly, the Court will deny Defendants' request for an award of attorney's fees and costs.

IT IS ORDERED that:

1. Defendants' Motion for Summary Judgment (Doc. 56) is granted in part;
2. summary judgment will be entered in favor of Defendant Richards' on Count I of the Complaint;
3. the claim against Defendant Richards in Count I will be dismissed with prejudice;
4. summary judgment will be entered in Defendants' favor on Count III of the Complaint;
5. Count III will be dismissed with prejudice; and
6. Defendants' request for an award of attorney's fees and costs is denied.

_____
UNITED STATES DISTRICT JUDGE